# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WALLACE PAUL GEORGE, | ) | 1:08cv01928 LJO DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S SOCIAL |
| | ) | SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Wallace Paul George ("Plaintiff"), proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for Findings and Recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on April 11, 2005, alleging disability since September 30, 2004, due to bone, joint and nerve problems, arthritis, back pain and right shoulder pain.  AR 83-

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1   85, 92-98.  After his applications were denied initially and on reconsideration, Plaintiff requested

2   a hearing before an Administrative Law Judge ("ALJ").  AR 70-72, 77-80, 46.  ALJ Sharon

3   Rogers held a hearing on October 16, 2007, and issued an order denying benefits on January 17,

4   2008.  AR 14-26, 48-67.  On July 17, 2008, the Appeals Council denied review.  AR 7-9.

5            Hearing Testimony

6            ALJ Rogers held a hearing in Stockton, California, on October 16, 2007.  Plaintiff

7   attended the hearing with his attorney, Tara Davis.  Vocational expert ("VE") Steve Schmidt also

8   appeared and testified.  AR 48.

9            When questioned by his attorney, Plaintiff explained that he was in prior motor vehicle

10  accidents that have contributed to his inability to work.  In 1983, Plaintiff was in a motorcycle

11  accident and injured his right leg and left shoulder.  His shoulder is still a problem and has been

12  reconstructed three times.  His leg, mostly from the knee down, continues to be a problem.  AR

13  55.  In 1996, Plaintiff was in another car accident.  His wife was killed in the accident and he

14  injured his left shoulder, low back and neck.  Plaintiff continues to experience constant, burning

15  pain in both shoulders.  AR 55-56.

16           Plaintiff explained that his shoulder pain affects his ability to lift his arm and thought that

17  he could lift 20 to 25 pounds "for a second or two."  He could not lift that amount on an ongoing

18  basis.  Plaintiff stopped working at his sedentary job in September 2004 because the desk work

19  involved too much sitting and caused pain in his back, sciatica in his right leg, burning in his

20  shoulders and stiffness in his neck.  AR 57.  He thought he could sit for about 10 or 15 minutes.

21  AR 58.  When he stands, he has lower back pain and sciatica.  Walking long distances causes

22  pain in his knee and he regularly uses a cane to walk.  AR 58.  Plaintiff did not bring an assistive

23  device because he wanted to be judged on his "own merit" rather than on "outward appearances."

24  AR 59.  Plaintiff also explained that walkers, crutches and canes are difficult for him to use

25  because of the pain it ultimately causes in his shoulders.  AR 59.  Plaintiff testified that he could

26  no longer lift a grocery bag with ice cream or canned dog food.  AR 60.  He does not need

27  assistance with his daily activities because he cuts them down to the "very bare minimum."

28

1    Plaintiff further testified that he has been diagnosed with atrial fibrillation that causes his

2  heart rate to increase.  This causes extreme fatigue, light headedness and headaches.  Plaintiff is

3  always fatigued during the day but cannot sleep because he can't get comfortable.  AR 61.  He

4  estimated that he would need 20 to 24 breaks during an eight hour day because he has to get up

5  every 15 minutes and "do something."  AR 61.

6    Plaintiff also has problems with depression.  He was taking medication but it interacted

7  with his heart medications and was discontinued.  He is scared to join counseling groups because

8  his physical issues are so overwhelming and thinking about mental issues is "just way too much"

9  to deal with.  AR 62-63.  He explained, though, that the loss of his wife was very difficult, as is

10  the fact that he can no longer earn a good income.  AR 63.

11    When questioned by the VE, Plaintiff explained that his prior position involved assessing

12  manufacturing problems and performing quality control.  AR 63-64.  The VE classified the

13  position as quality control engineer, usually performed at the light level, but performed by

14  Plaintiff at the sedentary level.  AR 65.

15    The ALJ asked the VE whether Plaintiff would have an opportunity to change position

16  from sitting to standing in his prior position.  The VE explained that it is a professional position

17  that has a great amount of flexibility, but since most of the work is done at a desk or computer,

18  sitting would be required most of the day.  AR 66.  The VE did not believe that there were

19  sedentary level positions for which Plaintiff would have transferrable skills that would offer more

20  opportunity to change position.  AR 66.

21    At the end of the hearing, the ALJ left the record open for 30 days to allow for the

22  submission of additional medical records.  AR 66-67.

23    Medical Evidence

24    A majority of the evidence predates Plaintiff's alleged onset date of September 30, 2004.

25    In 1995, he underwent treatment and surgery on his left shoulder after a 1983 motor

26  vehicle accident.  AR 198-202, 213-217.

27    He was involved in a second motor vehicle accident in 1996 and underwent another

28  surgery on his left shoulder.  AR 203-212.

An MRI of the lumbosacral spine taken in December 1998 showed very mild degenerative change.  AR 143.

Plaintiff began treating with Wesley Ringering, D.O., in 1999.  In April 1999, he complained of left shoulder pain and back pain.  Dr. Ringering diagnosed chronic thoracic and lumbar pain and pain in both shoulders.  He referred Plaintiff to an orthopedist.  AR 172.

On May 21, 1999, Plaintiff saw Earl L. Feng, M.D., for back and shoulder pain at the request of Dr. Ringering.  Dr. Feng noted that Plaintiff has seen numerous doctors and has not been satisfied with the results.  He also noted that another doctor was concerned about the amount of Vicodin Plaintiff was taking and refused to prescribe more.  On examination, Plaintiff was in no acute distress and walked with a relatively normal gait.  He could get on and off the examination table without a problem and straight leg raising was negative.  Strength was 5/5 in both lower extremities and sensation was intact to light touch at all lumbosacral dermatomes.  There were minimal muscle spasms.  Dr. Feng talked to Plaintiff about the findings and was not sure what he could offer.  He suggested another course of treatment but Plaintiff was "adamantly against" it.  Dr. Feng noted that Plaintiff takes a lot of narcotics and he did not fill any of his prescriptions.  Dr. Feng did not believe that surgery was an option and suggested that Plaintiff be evaluated at a pain clinic.  AR 149–150.

In June 1999, Plaintiff complained of chronic progressive back pain since the accident.  A neurological examination performed by Jeffrey Becker, D.O., was normal and straight leg raising was negative.  Plaintiff had full lumbosacral range of motion with some pain at the end points.  Dr. Becker diagnosed chronic lumbosacral strain with trigger points and infrequent right leg sciatica secondary to piriformis syndrome.  Dr. Becker referred Plaintiff to a pain clinic for trigger point injections.  AR 138-139.

On June 25, 1999, Plaintiff saw Richard J. Ruskin, M.D.  On examination, Plaintiff had tenderness of the right gluteal region to deep palpation.  There were two trigger points at the location of the spinous processes at L3 and L5.  Motor and sensory function was intact.  Plaintiff underwent two trigger point injections.  AR 147-148.

1     Plaintiff saw Dr. Ringering in July 2000 for back pain.  He was tender in his lower

2   lumbar spine.  Dr. Ringering diagnosed low back pain with bilateral radiculopathy.  AR 170.

3     Plaintiff continued to see Dr. Ringering through June 2003 for back pain.  AR 162, 163,

4   166, 169.  In January 2003, Plaintiff complained of pain in his right shoulder.  His shoulder was

5   tender and too painful to lift.  Dr. Ringering referred Plaintiff to an orthopedist.  AR 164.

6     On January 31, 2003, Plaintiff saw Daniel J. Mullen, M.D. and complained of pain in his

7   shoulders.  On examination, he was in no acute distress.  Range of motion in his right shoulder

8   was better than the left.  He had a very tender AC joint to palpation on the right and a very

9   positive crossarm adduction lift off test.  He diagnosed right AC joint arthropathy with

10  impingement syndrome and suggested a steroid injection and possible surgery.  AR 151-152.

11    In February 2003, Dr. Ringering diagnosed Plaintiff with depression and prescribed an

12  antidepressant.  AR 163.

13    X-rays of Plaintiff's right shoulder taken on June 16, 2003, showed mild degenerative

14  changes of the right acromioclavicular joint.  AR 146.

15    In December 2003, Plaintiff called Dr. Ringering after injuring his back while working on

16  his truck and requested a prescription for pain.  He was given Vicodin.  AR 162.

17    In January 2004, Plaintiff saw Dr. Ringering after hurting his wrist while "shoveling

18  gravel."  He diagnosed tendinitis in Plaintiff's right wrist.  AR 160.  A week later, he complained

19  of low back pain and was given Vicodin.  AR 160.

20    Plaintiff continued to see Dr. Ringering through May 2004 for back pain and various viral

21  infections.  AR 159-160.  In July 2004, Plaintiff cancelled his appointment but called to

22  requested a prescription for Vicodin.  Plaintiff called again in September 2004 and requested

23  Vicodin, though he did not appear for his scheduled appointment.  AR 157-159.

24    On March 23, 2005, Dr. Ringering completed a Medical Information form and opined

25  that Plaintiff was unable to perform substantial gainful employment because of pain in his

26  shoulders, back and right knee.  He gave no specific limitations.  AR 156.

27    Plaintiff saw Wayne Broky, M.D., for a consultive examination on May 11, 2005.  On

28  examination, Plaintiff was in no acute distress and walked with a normal gait.  He could walk on

1    tiptoes and heels and could squat and rise while supported.  There was some discomfort to

2    palpation over the lumbosacral spine and in the right gluteal musculature.  Cervical range of

3    motion was normal, though crepitation existed.  Lumbar flexion was limited.  He had functional

4    range of motion in both shoulders, although ranging caused discomfort.  Plaintiff could reach

5    behind his neck with both hands and behind his lower back with both hands.  There was full

6    range of motion in his hips, knees and ankles.  Muscle strength and sensation were normal in all

7    extremities, except for reduced light touch in the right foot.  In addition to citing Plaintiff's prior

8    accidents and surgeries, Dr. Broky diagnosed chronic neck, bilateral shoulder, lower back and

9    right leg pain, and cervical and lumbar spondylosis/degenerative disc disease.  AR 180-182.

10         Dr. Broky opined that Plaintiff could lift 50 pounds occasionally, 10 pounds frequently

11   and sit for between two to six hours per day.  He could sit for four to five hours and would need

12   to alternate sitting and standing.  Plaintiff could frequently reach and could occasionally climb,

13   stoop, kneel, crouch and crawl.  He could not work in extreme temperatures.  AR 177-179.

14         On June 14, 2005, a State Agency physician completed a Physical Residual Functional

15   Capacity form.  The physician opined that Plaintiff could lift 20 pounds occasionally, 10 pounds

16   frequently, sit for about six hours and stand for about six hours.  He could not perform continued

17   overhead lifting and could never climb ladders, ropes and scaffolds.  The physician noted that

18   although Plaintiff had a history of trauma and surgical correction, he had no residual sings, i.e.,

19   muscle atrophy.  AR 185-192.

20         In September 2006, Plaintiff was seen in the emergency room for chest pain and shortness

21   of breath.  His heart rate was rapid and he was given medication.  Plaintiff's lab results were

22   consistent with heavy drinking.  A chest x-ray suggested chronic obstructive pulmonary disease

23   and an electrocardiogram showed atrial fibrillation.  He was admitted to the hospital for two days

24   and discharged with medications.  AR 275-369.

25         In October 2006, Plaintiff was seen again in the emergency room for a rapid heart beat.

26   He had a history of atrial fibrillation and ran out of medication.  AR 268-274.

27

28

1    An x-ray of Plaintiff's right knee taken on November 24, 2006, showed osseous

2  corticated density in the anterior joint space suggestive of chondromatosis.  The x-ray was

3  otherwise normal and unchanged from the June 2006 x-rays.  AR 265.

4    On April 20, 2007, Plaintiff was admitted to Tuolumne Psychiatric Center after he

5  apparently overdosed on cardiac medications while drinking whiskey.  Plaintiff improved shortly

6  after he was admitted but he was held overnight for observation.  He was diagnosed with

7  adjustment disorder with disturbance of mood and conduct, depressive disorder secondary to a

8  general medication, alcohol abuse and rule out post traumatic stress disorder.  AR 218-245, 260-

9  264.

10    On May 24, 2007, Plaintiff was seen in the emergency room for complaints of tightness

11  in his chest.  A chest x-ray showed pulmonary overexpansion, which could indicate chronic

12  pulmonary disease.  There was no evidence of acute chest disease.  AR 248-259.

13    ALJ's Findings

14    The ALJ determined that Plaintiff had the severe impairments of status-post bilateral

15  shoulder surgery, status-post fracture and surgeries lower right leg, episodic atrial fibrillation,

16  degenerative disc changes in his lower back and osteoarthritis in his right shoulder.  AR 19.

17  Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform

18  the full range of sedentary work.  AR 20.  With this RFC, the ALJ concluded that Plaintiff could

19  perform his past relevant work.  AR 20.

20                                   **SCOPE OF REVIEW**

21    Congress has provided a limited scope of judicial review of the Commissioner's decision

22  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

23  the Court must determine whether the decision of the Commissioner is supported by substantial

24  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

25  _Richardson v. Perales_, 402 U.S. 389, 402 (1971), but less than a preponderance.  _Sorenson v._

26  _Weinberger_, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

27  reasonable mind might accept as adequate to support a conclusion."  _Richardson_, 402 U.S. at

28  401.  The record as a whole must be considered, weighing both the evidence that supports and

                                          7

1    the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

2    995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

3    apply the proper legal standards. *E.g.,* *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988).

4    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

5    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

6    substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

7    Cir. 1987).

8                                                    **REVIEW**

9          In order to qualify for benefits, a claimant must establish that he is unable to engage in

10   substantial gainful activity due to a medically determinable physical or mental impairment which

11   has lasted or can be expected to last for a continuous period of not less than 12 months. 42

12   U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

13   such severity that he is not only unable to do her previous work, but cannot, considering his age,

14   education, and work experience, engage in any other kind of substantial gainful work which

15   exists in the national economy. *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir. 1989).

16   The burden is on the claimant to establish disability. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th

17   Cir. 1990).

18         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

19   regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

20   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ

21   found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

22   his disability; (2) has an impairment or a combination of impairments that is considered "severe"

23   (severe impairments of status-post bilateral shoulder surgery, status-post fracture and surgeries

24   lower right leg, episodic atrial fibrillation, degenerative disc changes in his lower back and

25   osteoarthritis in his right shoulder) based on the requirements in the Regulations (20 CFR §§

26   416.920(b)); (3) does not have an impairment or combination of impairments which meets or

27   equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) can

28   perform his past relevant work. AR 19-22.

1    Here, Plaintiff argues that his counsel was ineffective.  He requests a new hearing and the

2    opportunity to present new evidence.

3                                                    **DISCUSSION**

4    Plaintiff retained Gary Nelson on July 23, 2006, to represent him at the administrative

5    hearing.   He contends that both Mr. Nelson and Tara Davis, the attorney who ultimately

6    represented him at the hearing, failed to provide adequate representation.  Plaintiff's argument is

7    based mainly on his belief that counsel failed to present adequate evidence to show that Plaintiff

8    was disabled.

9    An ineffective assistance of counsel claim requires a constitutional right to counsel, a

10   right which exists only in the defense of criminal allegations.  *See eg.*, *Strickland v. Washington*,

11   466 U.S. 668, 687 (1984).  The Supreme Court has never recognized a constitutional right to

12   counsel in Social Security proceedings.  *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th

13   Cir.1992).  "Given the nonadversarial nature of the administrative process, competent legal

14   representation of the claimant during the process is not a prerequisite to issuance of a valid

15   administrative decision."  *Banta v. Chater*, 1995 WL 864573, *2 (W.D. Okl. 1995).

16   Nonetheless, the ALJ has a duty to develop the record in certain circumstances whether or

17   not a claimant is represented by counsel.  When the evidence is ambiguous or "the record is

18   inadequate" to allow for proper evaluation of the evidence, the ALJ's duty to develop the record

19   is triggered.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  The ALJ may discharge

20   this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions

21   to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

22   allow supplementation of the record.  *Id.*

23   Plaintiff doesn't specifically state what evidence and/or witnesses existed that would have

24   supported his disability claim.  Mere speculation is not sufficient to support a claim.  While the

25   Court recognizes that Plaintiff is proceeding pro se, Defendant raised the need to be more

26   specific in the opposition yet Plaintiff provided no additional facts.  In other words, Plaintiff has

27   failed to explain what other evidence exists that renders the record before the ALJ incomplete.

28

9

1          Contrary to Plaintiff's suggestion, the medical record was neither ambiguous nor

2    inadequate to allow proper evaluation by the ALJ.  It contained medical evidence from Plaintiff's

3    prior accidents, which he contended contributed to his current impairments.  The medical record

4    began with treatment in 1999 and continued through 2007.  Plaintiff often complained of back

5    pain and/or shoulder pain, though the objective findings were relatively mild.  His most recent

6    examination in March 2005 revealed minimal findings.  Though Plaintiff was seen for chest pain

7    in 2006 and 2007, and received in-patient treatment for depression in 2007, he received little

8    treatment for his back or shoulders.

9          The record was therefore sufficient to allow the ALJ to properly evaluate the evidence

10   and find that Plaintiff was capable of performing his past work at the sedentary level.  In any

11   event, the ALJ held the record open for 30 days to allow Plaintiff to submit additional evidence.

12   He failed to do so.

13         Insofar as Plaintiff suggests that his condition has worsened since the hearing, such

14   evidence would not affect the validity of the ALJ's decision.  Plaintiff may, however, file a new

15   application for the time period not addressed by the ALJ.

16                                    **RECOMMENDATION**

17         Based on the foregoing, the Court finds that the ALJ's decision is supported by

18   substantial evidence and is based on proper legal standards.   Accordingly, the Court

19   RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

20   Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue

21   and against Plaintiff Wallace Paul George.

22

23

24

25

26

27

28

1    This Findings and Recommendation will be submitted to the Honorable Lawrence J.

2  O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after

3  being served with this Findings and Recommendation, the parties may file written objections

4  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

5  and Recommendation."  The parties are advised that failure to file objections within the specified

6  time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

7  (9th Cir. 1991).

8

9    IT IS SO ORDERED.

10   **Dated:**    **September 20, 2010**                          **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28